UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 10-23296-CIV-SCOLA

ALBERTO JOSE GONZALEZ et al.,

       Plaintiffs,

v.

METROPOLITAN DELIVERY
CORPORATION et al.,

       Defendants.
_____ /

## ORDER ON MOTIONS FOR SUMMARY JUDGMENT

THIS MATTER is before the Court on the Motion for Summary Judgment [ECF No. 24], filed by Defendants Metropolitan Delivery Corp. ("Metropolitan"), Maria Galo, and Jose Galo (together, the "Galos"), and the Motion for Partial Summary Judgment [ECF No. 40], filed by Plaintiffs Alberto Jose Gonzalez, Julio Diaz, and Tomas Huaman. For the reasons set forth below, the Court grants summary judgment to the Defendants in part and to the Plaintiffs in part.

### Introduction

In this case, Plaintiffs allege that Defendants violated the Fair Labor Standards Act ("FLSA") by failing to pay overtime for work allegedly performed during the Plaintiffs' on-call break periods, which lasted from approximately 12 noon until 3 p.m. each afternoon. The primary issue before the Court is whether Plaintiffs' daily on-call break periods were compensable under the law. Subsidiary issues include whether the Plaintiffs were properly compensated under the FLSA for actual working time during their breaks; whether the Galos qualify as Plaintiffs' employers under the FLSA, such that they are jointly and severally liable with Metropolitan for any overtime violations; whether any overtime violations were willful, such that Plaintiffs are entitled to an extended limitations period; and whether Defendants acted in good faith so as to preclude an award of liquidated damages.

Upon considering the facts in the most favorable light to the non-movants, the Court grants summary judgment to the Defendants in part and to the Plaintiffs in part. Plaintiffs' daily on-call break periods do not qualify as compensable time as a matter of law; therefore, Defendants are entitled to summary judgment on this issue. The Court also finds that the Galos

are FLSA employers as a matter of law; therefore, the Plaintiffs are granted summary judgment on this issue. As to whether Plaintiffs were properly compensated for all time actually worked, however, summary judgment is precluded by disputed issues of material fact. Likewise, disputed material factual issues make summary judgment inappropriate as to whether any FLSA violations were willful and as to whether Defendants acted in good faith.

## **Statement of Facts**

Metropolitan is in the parcel pick-up and delivery business, as an authorized independent contractor for the worldwide shipping and logistics company DHL Express (USA), Inc. ("DHL"). In short, Metropolitan contracts with DHL to provide certain pick-up and delivery services for packages shipped by DHL customers.

Metropolitan is owned by the Galos, with Jose and Maria Galo each owning equal half shares of the company. Jose Galo is President and Secretary of Metropolitan, while Maria Galo is Vice President and Treasurer. During the times relevant to this litigation, Jose Galo served as the liaison between Metropolitan DHL, ensuring that DHL's expectations, as outlined in the contracts between the parties, were appropriately met. The Galos also had primary financial control and responsibility over the company, and Jose Galo was responsible for making company budgetary decisions. Maria Galo was responsible for reporting all time worked by employees to the payroll company and received notification of any discrepancies between what was paid to employees and what she reported. Beyond this, the parties dispute the degree of involvement by the Galos in Metropolitan's day-to-day operations, specifically in regards to their involvement with payroll policies and decisions.

Metropolitan hired and employed the three Plaintiffs as delivery drivers for varying durations in 2009, 2010, and 2011. None of the Plaintiffs were interviewed or hired by the Galos. Plaintiffs' pay was set by Metropolitan's Regional Manager and Supervisor Carlos Quintero and Station Manager Pam Gonzalez. During their employment with Metropolitan, Plaintiffs received immediate direction only from three supervisors and managers: Pamela Gonzalez, Rene Pineda, and Carlos Quintero. The Plaintiffs never received direct orders from the Galos.

As delivery drivers, Plaintiffs were responsible for loading their delivery vehicles each morning and then delivering and pick-up packages in a designated delivery territory throughout the day. Besides the time spent loading their vehicles in the morning and checking out upon their return in the evening, each Plaintiff's entire work day was spent in the delivery vehicle out

in their delivery territories. The work day for all Metropolitan delivery drivers, including Plaintiffs, was split into two shifts. They completed their deliveries in the morning, generally ending between 12 noon and 1 p.m., and made their pick-ups in the afternoon, usually beginning between 2 p.m. and 3 p.m.

The time in between was designated as on-call break time, during which delivery drivers, including Plaintiffs, were free to pursue personal endeavors, subject to certain restrictions and the proviso that they could be called upon to continue or resume work as needed. One of the primary restrictions was that Metropolitan prohibited its drivers from traveling more than five miles outside of their delivery territories in company vehicles, although the drivers were free to use their own vehicles to go elsewhere during their breaks. Plaintiffs, like other drivers, were also required to carry company cell phones and GPS scanners at all times, including during their breaks, so that Metropolitan could reach them while they were out in the field.

While the parties agree that these restrictions were in place, they disagree about how, in practice, the restrictions actually impacted the Plaintiffs' break time. According to Plaintiffs, Defendants required them to keep cell phones and GPA scanners with them, and to remain within five miles of their delivery zone, so that Metropolitan could send them re-delivery, "late freight," and new pick-up assignments during their on-call break periods.

The need for a re-delivery would arise when a driver was unable to effectuate a delivery in the morning because the intended recipient was not at the delivery location. In those instances, the driver would leave a note instructing the recipient to phone Metropolitan to arrange for re-delivery. Upon hearing from the recipient, Metropolitan would then call the drivers and instruct them to re-deliver the packages, regardless of whether or not the call occurred during the drivers' break periods. Additionally, the drivers would obtain pick-up notifications during this time. According to Plaintiffs, the window of time to carry out these pick-ups would vary, but some would have to be completed immediately and such time would not be reflected on their timesheets.

Plaintiffs also maintain that the drivers were responsible for receiving what was called "late freight" during their breaks. Late freight consists of the packages that would come in after the drivers had already left in the morning, but that needed to be delivered that day. The drivers would allegedly receive a call from Metropolitan, between 1 p.m. and 3 p.m., in regards to the late freight packages. The drivers were then required by the company to immediately drive outside their delivery zones to meet a Metropolitan representative to obtain the late freight packages, and then drive back into their delivery zones to begin delivering the packages.

According to Plaintiffs, the drivers' time cards would not reflect that they had resumed working until the first late freight delivery was completed, even though it would take upwards of one to two hours to drive out of the delivery zone, meet the Metropolitan representative, obtain all the late freight packages, and drive back into the delivery zone to effectuate delivery at the recipient's location.

Defendants do not dispute that Metropolitan would sometimes send pick-up notifications during the Plaintiffs' break time, to which Plaintiffs were required to respond. They also agree that at times Plaintiffs might be required to end their breaks early to make a pick-up or delivery. Defendants insist, however, that such notifications did not interrupt their drivers' breaks with any frequency – on average, only about one time per every two weeks. When such notifications were sent during break time, Defendants contend that immediate responses were not required; instead, Metropolitan generally expected its drivers to respond to pick-up notifications within an hour of being sent. Further, because all pick-ups had what were called "pick-up windows" that generally lasted between two and four hours, Plaintiffs were not required to immediately make pick-ups for which they had received notifications. Defendants also maintain Plaintiffs were properly compensated any time they were required to end their breaks early in order to do actual work.

Outside of the company's restrictions, the parties agree that delivery drivers were permitted to engage in any number of personal activities during their break time, including going home to eat and rest, visiting with friends, and going to the gym to workout. As relevant here, Plaintiff Huaman generally went home to eat lunch and take a nap during his break. Likewise, Plaintiff Diaz used his break periods to eat lunch and just sit and think in his delivery vehicle.

Because Plaintiffs performed their work duties independently in their own delivery territories throughout the day, they were responsible for tracking and reporting their own hours worked, including any overtime. Plaintiffs were required to maintain and track their hours on "Driver Daily Hour Recap" sheets, which were essentially timesheets. Beginning in or about May 2009, these timesheets contained the following language:

> **EMPLOYEE ACKNOWLEDGMENT** – I certify that the hours listed above are correct and represent all of the hours I have worked during the indicated pay period. I understand that if the above hours are not correct, I should not sign this acknowledgement but rather bring any discrepancy to the attention of my supervisor who will review the information and make any necessary adjustments in the hours worked shown above.

Thus, in signing their timesheets, the Plaintiffs affirmed that the hours they tracked and reported were accurate and reflective of actual time worked.

From week-to-week, the number of hours Plaintiffs worked varied a fair amount; however, over the course of their employment, each Plaintiff reported and was paid, on average, more than forty hours per week. In fact, Plaintiff Gonzalez averaged about 47 hours per week over 70 workweeks; Plaintiff Diaz averaged 42 hours per week over 126 workweeks; and Plaintiff Huaman averaged about 45 hours per week over 57 workweeks. The parties agree Plaintiffs were paid for all time worked, both regular and overtime, when such time was reported on their timesheets. What they disagree over is whether Plaintiffs' break time, and particular work activities performed on break time, should have also been factored in as compensable time.

## **Legal Standard**

Under Federal Rule of Civil Procedure 56, "summary judgment is appropriate where there 'is no genuine issue as to any material fact' and the moving party is 'entitled to a judgment as a matter of law.'" *See Alabama v. North Carolina*, 130 S. Ct. 2295, 2308 (2010) (quoting Fed. R. Civ. P. 56(a)). At the summary judgment stage, the Court must view the evidence in the light most favorable to the nonmoving party, *see Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970), and it may not weigh conflicting evidence to resolve disputed factual issues, *see Skop v. City of Atlanta, Ga.*, 485 F.3d 1130, 1140 (11th Cir. 2007). Yet, the existence of some factual disputes between litigants will not defeat an otherwise properly grounded summary judgment motion; "the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Further, where the record as a whole could not lead a rational trier of fact to find in the nonmovant's favor, there is no genuine issue of fact for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"[O]nce the moving party has met its burden of showing a basis for the motion, the nonmoving party is required to 'go beyond the pleadings' and present competent evidence designating 'specific facts showing that there is a genuine issue for trial.'" *United States v. $183,791.00*, 391 F. App'x 791, 794 (11th Cir. 2010) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). Thus, the nonmoving party "may not rest upon the mere allegations or denials of his pleadings, but [instead] must set forth specific facts showing that there is a genuine issue for trial." *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (citation omitted). "Likewise, a [nonmovant] cannot defeat summary judgment by relying upon conclusory assertions." *Maddox-Jones v. Bd. of Regents of Univ. of Ga.*, 2011 WL 5903518, at *2 (11th Cir. Nov. 22, 2011). Mere "metaphysical doubt as to the material facts" will not suffice. *See Matsushita*, 475 U.S. at 586.

## **Legal Analysis**

The Court finds that Defendants are entitled to partial summary judgment because, as a matter of law, the Plaintiffs' on-call break periods do not qualify as compensable time under the FLSA. The Court also finds Plaintiffs are entitled to partially summary judgment on the issue of whether the Galos qualify as employers under the FLSA. As to all other issues, however, material disputes of fact preclude summary judgment. Therefore, the jury will be left to decide whether Plaintiffs were fully compensated for all time they actually worked, and whether any FLSA violations were willful. To the extent necessary, the Court will thereafter be tasked with determining whether Defendants acted in good faith for purposes of liquidated damages.

### A. Are Plaintiffs Entitled to Compensation for Break Time?

The Plaintiffs ask the Court to find that their on-call break time is compensable under the law. According to Plaintiffs, the restrictions placed on them during their break periods was so onerous as to transform that time into work time for which compensation is due. This Court disagrees.

Even accepting Plaintiffs' versions of events,[1] the law of this Circuit dictates that Plaintiffs' breaks were not compensable. The inquiry turns on whether Plaintiffs could use the time for personal endeavors, *see Birdwell v. City of Gadsen*, 970 F.2d 802, 807 (11th Cir. 1992), or put another way, whether "the time [was] spent predominately for the employer's benefit or for the employee's," *see Armour & Co. v. Wantock*, 323 U.S. 126, 133 (1944). This inquiry is "dependent upon all the circumstances of the case." *See Skidmore v. Swift & Co.*, 323 U.S. 134, 136 (1944).

In finding Plaintiffs' breaks are not compensable here, the Court is persuaded by the reasoning in *Chapman v. Grable Plumbing Co.*, 2011 WL 3269628 (M.D. Fla. Aug. 1, 2011), wherein the district court surveyed the law of this Circuit and reached the same conclusion. In *Chapman*, the plaintiff, a plumber, argued that he should have been compensated for his on-call time because he was required to be within fifteen minutes of his service van at all times, which restricted him from leaving his home or doing any personal activities because the employer prohibited its plumbers from using service vans for any personal reasons. The district court reviewed a number of relevant cases, including, most notably, *Birdwell*. There, the Eleventh Circuit held that police detectives were not entitled to compensation for their on-call

---

[1] For purposes of deciding the break time issue, the Court construes all undisputed facts in the light most favorable to the Plaintiffs and, as to any disputed facts, the Court accepts the Plaintiffs' version of events.

time, even though they: (1) were required to be on-call for twenty-four hour periods, seven days in a row; (2) had to carry a beeper at all times if they left their homes; (3) were not allowed to drink alcohol, leave town, go on vacation, or engage in outdoor activities like hunting or fishing; and (4) had to take their own vehicles if they went anywhere with friends or family members, in case they were abruptly called to work.  *See Birdwell*, 970 F.2d at 810.  Even though these conditions seem quite restrictive, the Eleventh Circuit held that the detectives' on-call time was used predominately for their own benefit, and that no reasonable jury could conclude otherwise.  *See id.*  The Court of Appeals held that "an employee's free time must be ***severely restricted*** for off-time to be construed as work time for purposes of the FLSA."  *See id.* (emphasis supplied).

Applying this and other relevant precedents, the district court in *Chapman* found that the employer was entitled to summary judgment because the restrictions on the plaintiff were not so onerous as to transform his on-call time into working time.  *Chapman*, 2011 WL 3269628, at *4.  The court noted that the plaintiff, like the Plaintiffs in this case, "attempt[ed] to defeat summary judgment by pointing out disputed facts between his version of the on-call restrictions and [the employer's] version."  *See id.*  The court found, however, that even accepting the plaintiff's version of events, summary judgment was inevitable because the plaintiff admittedly had substantial freedom to do personal activities while on-call:

> [The plaintiff] testified during his deposition that while he was on-call he could eat dinner at home, watch tv, "mill around the house," and go to sleep.  Although [he] may have chosen to remain at home during this time, there is nothing in the record to suggest that [the employer] required [plaintiff] to stay at home.  And the fact that [he] could not use the service van for personal use, although inconvenient, is not dispositive in light of the cases discussed above.  Also, in light of the cases discussed above, the Court concludes that [the employer's] policy that [plaintiff] must respond to a service call within ten minutes and be within fifteen minutes of his service van was not so onerous as to require compensation.

*Id.*  Thus, as to on-call time, the court found the employer was entitled to summary judgment.

This Court reaches the same conclusion, and for like reasons.  Plaintiffs contend that, during their breaks, they: (1) were required to remain within five miles of their delivery zones; (2) had to carry pagers and GPS scanners so they could be immediately reached and given instructions regarding re-deliveries, pick-ups, and late freight; (3) had to respond immediately when paged; and (4) had to carry out re-delivery, pick-up, and late freight assignments promptly.  Yet, these restrictions are no more burdensome (indeed, they appear less so) than those found acceptable in *Birdwell*, *Chapman*, and similar cases.  *See Birdwell*, 970 F.2d at 810; *Chapman*,

2011 WL 3269628, at *4; *Bright v. Houston Nw. Med. Ctr.*, 888 F.2d 1059 (5th Cir. 1989) (on-call time not compensable under FLSA even though plaintiff was on-call for eleven months straight, had to remain sober while on-call, had to be reachable by beeper, and had to report to work within twenty minutes of being paged).

Moreover, the undisputed evidence shows that Plaintiffs could, and did, use their break periods for personal or leisure activities, such as eating lunch, running errands, going home, going to the gym, and resting. *See* Diaz Dep. at 60-62; Huaman Dep. at 21; Pineda Decl. ¶¶ 7-8. While it may have been inconvenient that Plaintiffs had to remain within five miles of their delivery zones if using their delivery vehicles for personal activities while on break, such a condition does not amount to a "severe" restriction under Eleventh Circuit case law. *See Birdwell*, 970 F.2d at 810. This is particularly true given that the delivery zones sometimes encompassed an area greater in size than a city, thereby allowing Plaintiffs substantial freedom to roam. *See* Gonzalez Dep. at 21 (Plantation); Diaz Dep. at 13-14 (Opa Locka, Sunrise, Davie, Hollywood);[2] Huaman Dep. at 12 (Tamarac, part of Lauderhill). Under the circumstances at play here, the Court finds that Plaintiffs' on-call break time is not compensable under the FLSA as a matter of law. Defendants are entitled to summary judgment on this issue.

### B. Were Plaintiffs Fully Compensated for All Time Worked?

The Court reaches a different conclusion concerning whether the Plaintiffs were fully and properly compensated for all time they allegedly worked. On this question, disputed issues of material fact preclude summary judgment.

Defendants contend that Plaintiffs were responsible for recording their own time and that the undisputed record shows they were fully paid, both regular time and overtime, for all working time recorded and submitted. The Court agrees. But that does not end the matter, for there is also record evidence to the effect that Plaintiffs were engaged in actual work during break time – work for which they allegedly received no wages.

For example, Plaintiff Gonzalez testified at deposition that he worked through lunch some days and did not record it as working time:

---

[2] To clarify, Plaintiff Diaz drove several routes during his tenure. Diaz Dep. at 13-14. His delivery zone encompassed each of the above cities at different times, not all of them at once. This is immaterial to the Court's analysis, however. The fact of the matter is, Plaintiff Diaz could have traveled a substantial area during his break time, up to five miles beyond the particular city he was servicing at that point in his employment.

> Q. Right. So then this – these hours shown on these forms are the actual hours that you worked. You didn't work any more hours than this; correct?
>
> A. I worked more hours, but these are the hours that they would match with the times that they requested so I would continue working for this company.
>
> * * *
>
> A. They did not allow us – what I really work, they did not allow it, because they would call and tell you, "Hey, stop, because you're working too much."
>
> * * *
>
> Q. When you say that they told you to stop, they told you to stop working.
>
> A. Yes. But I would continue working, to do my work and not to have cargo left over. Because the time was not enough. There was a lot of traffic and that was a long route. And one wants to do the job well.

*See* Gonzalez Dep. at 40, 45-46.  Plaintiff Diaz provided similar testimony during his deposition:

> Q. And when you left to go pick up those things, you started recording your hours, correct?
>
> A. No.
>
> * * *
>
> Q. And you were paid for every hour that you worked, correct?
>
> A. The ones I put down there, yes.
>
> * * *
>
> Q. So you were told to stop working at noon and to begin working at three, correct?
>
> A. Yes.
>
> Q. And that's what you did, you stopped working at 12 and you started working at three, correct?
>
> A. No, that is not correct.

*See* Diaz Dep. at 39-41.  And so did Plaintiff Huaman:

> Q. And when you continued picking up [into your break time], you wrote that in your hours?
>
> A. No, no. During that break, I couldn't put down anything. During that break, I couldn't put down anything.
>
> * * *

> Q. You testified at least seven or eight times that you were required to write down every hour that you worked, correct?
>
> A. Correct.
>
> Q. Even if those hours went into what was supposed to be your break time, correct?
>
> A. No.

*See* Huaman Dep. at 43, 45.

The Court recognizes that all three Plaintiffs provided testimony at deposition that, to varying degrees, contradicts the above cited testimony. For example, each Plaintiff testified that they recorded all their working time and were fully paid for it. *See* Gonzalez Dep. at 36; Diaz Dep. at 23; Huaman Dep. at 28. Over and over again. *See* Gonzalez Dep. at 38-39, 41-42; Diaz Dep. at 30-32; Huaman Dep. at 30, 37-38, 42, 45. Yet, it is equally clear that other testimony, set out above, supports an inference that Plaintiffs worked during their break time and did not report it to Defendants for fear of being disciplined or fired, or for some other reason. That is enough to preclude summary judgment on this issue. It is not for this Court to decide which portions of Plaintiffs testimony should be believed or disbelieved, no more so than it is this Court's job to decide the significance of the fact that, for example, Metropolitan fired Plaintiff Diaz for lying about delivering a package that he never did. *See* Diaz Dep. at 28-29. As it must, the Court will leave the business of judging witness credibility and the significance of facts to the jury.

In order to streamline matters for trial, however, Plaintiffs shall provide Defendants with calculations of the time they contend was omitted from their pay, along with all supporting documentation, no later than May 1, 2012. *See Chapman*, 2011 WL 3269628, at *6. The Court recognizes the testimony of Plaintiffs at deposition to the effect that they do not have any documentation to substantiate the hours they allegedly worked, but did not record, during their break periods. *See* Gonzalez Dep. at 41; Diaz Dep at 32-33; Huaman Dep at 38-39. While this fact may make the road ahead difficult for Plaintiffs, it has no bearing on summary judgment. *See Allen v. Bd of Pub. Educ. for Bibb Cnty.*, 495 F.3d 1306, 1317-18 (11th Cir. 2007) ("it is clear that the [employer] was not entitled to summary judgment based on Plaintiffs' lack of documentation and inability to state with precision the number of uncompensated hours they worked and the days on which that work was performed"); *see also Solano v. A Navas Party Prod., Inc.*, 728 F. Supp. 2d 1334, 1342 (S.D. Fla. 2010) ("it is the duty of the trier of facts to draw whatever reasonable inferences can be drawn from the employees' evidence") (citation

omitted). Due to disputed issues of fact, the Court must deny summary judgment to Defendants regarding whether Plaintiffs were fully compensated for all hours worked. *See Chapman*, 2011 WL 3269628, at *6.

### C. Are the Galos "Employers" Under the FLSA?

The Court enters summary judgment in favor of the Plaintiffs as to whether the Galos should be regarded as employers under the FLSA. The question of whether the Galos were employers within the meaning of the Act calls for a legal determination, but it must be grounded on underlying findings of fact. *See Patel v. Wargo*, 803 F.2d 632, 634 n.1 (11th Cir. 1986). In this case, the undisputed facts support a legal finding of employer status.

"The Supreme Court has emphasized the 'expansiveness' of the FLSA's definition of employer." *See id.* at 1340 (citing *Falk v. Brennan*, 414 U.S. 190, 195 (1973)). Indeed, the FLSA broadly defines an employer as "any person acting directly or indirectly in the interest of an employer in relation to an employee." *See* 29 U.S.C. § 203(d). "Whether an individual falls within this definition does not depend on technical or isolated factors but rather on the circumstances of the whole activity." *Alvarez Perez v. Sanford-Orlando Kennel Club, Inc.*, 515 F.3d 1150, 1160 (11th Cir. 2008) (citations omitted); *see also Hodgson v. Griffin & Brand of McAllen, Inc.*, 471 F.2d 235, 237 (5th Cir.1973). The Eleventh Circuit has explained that an individual "must either be involved in the day-to-day operation or have some direct responsibility for the supervision of the employee," in order to qualify as an FLSA employer. *See Alvarez Perez*, 515 F.3d at 1160 (quoting *Patel*, 803 F.2d at 638). A party need not have exclusive control of a corporation's everyday workings, so long as he has "operational control of significant aspects of the corporation's day to day functions." *See Alvarez Perez*, 515 F.3d at 1161 (quoting *Dole v. Elliott Travel & Tours, Inc.*, 942 F.2d 966 (6th Cir.1991)).

Here, Defendants argue that the Galos are not employers because they did not determine employee compensation, did not supervise employees, did not exercise any authority to hire and fire employees, and did not control Metropolitan's pick-up and delivery operations. *See* Defendants' Mot. at 15-16. Plaintiffs counter that the Galos were Metropolitan's sole owners, that they were signatories on the business operating account, and that they maintained primary financial control over the company. *See* Plaintiffs' Resp. at 5-6. Plaintiffs also state that Jose Galo held responsibility for making budgetary decisions, while Maria Galo was responsible for reporting all employee work time to the payroll company and received notification of any discrepancies from that company regarding payroll. *See id.* at 6. Further, Maria Galo approved the guidelines and pay rates for all employees, including Plaintiffs, after they were established by

company supervisor Carlos Quintero. *See id.* Plaintiffs also point to certain testimony indicating that the restrictions on employee break time came from "upper management," with the inference being that such policies were set, or conceived of, by the Galos. *See id.*

The facts identified by Plaintiffs are enough to establish that the Galos are employers. As courts have recognized, a corporate owner may be deemed an FLSA employer if he was "involved in the business operations of the corporation" and "controlled the purse strings of the corporation." *See Alvarez Perez*, 515 F.3d at 1161-62 (discussing *Dole*, 942 F.2d at 966). This may be true even where "the day-to-day control of specific operations was not entirely in [the owner's] hands," and "many of the day-to-day problems relating to operation of the corporation" were left to someone else. *See Dole*, 942 F.2d at 966; *see also Olivas v. A Little Havana Check Cash, Inc.*, 324 F. App'x 839, 845-46 (11th Cir. 2009) (reversing summary judgment as to FLSA employer status where co-owner was signatory to company's bank account and also exercised occasional control over day to day operations). These cases suggest that the Galos may be deemed FLSA employers, even though they did not directly supervise the Plaintiffs and did not micromanage their daily activities.

The Galos "controlled the purse strings of the corporation," *see Dole*, 942 F.2d at 966; M. Galo Dep. at 16-17, and there is evidence to the effect that overarching corporate policies pertaining to break time and overtime compensation were attributable to "upper management," including the Galos. *See* Pineda Dep. at 10-11; *see also* Gonzalez Dep. at 29 (testifying that break periods were established upon "orders from the boss"); Huaman Dep. at 55 (testifying that supervisor "receives the orders from the owners of the company"). Further, Maria Galo had her hand in payroll, at least to some degree. *See* M. Galo Dep. at 8, 29-30. She also testified to knowledge of what Metropolitan's drivers typically did during their free time while on break. *See id.* at 45-46. Metropolitan supervisor Carlos Quintero testified that he spoke to the Galos on average three times per week concerning matters such as employee requests for extended time off. *See* Quintero Dep. at 13-14. Quintero also testified that while he was responsible for putting into place the company pay rates, the Galos "had their say, of course" and he had to "run it by them before it was a final decision." *See id.* at 14-15. In addition, according to Quintero, the Galos received copies of employee reviews and appraisals and, together with him, made all company budgetary decisions. *See id.* at 70-71.

The Court need not belabor the point: These facts are plenty sufficient to establish, as a matter of law, that the Galos qualify as employers under the FLSA. *See Solano*, 728 F. Supp. 2d at 1342; *Olivas*, 324 F. App'x at 845-46. Therefore, Plaintiffs are granted summary judgment on this issue.

### D. Did the Defendants "Willfully" Violate the FLSA?

The Court denies summary judgment on the question of willfulness. Plaintiffs have alleged that Defendants "willfully and intentionally" refused to pay overtime, as required by the FLSA, and that they "recklessly failed to investigate whether [their] payroll practices were in accordance with the [FLSA]." Am. Comp. ¶ 22.

Defendants argue they should be awarded summary judgment as to willfulness because Plaintiffs have no evidence beyond their conclusory allegations that Defendants acted recklessly. *See* Defendants' Mot. at 18. According to Defendants, summary judgment is appropriate because they relied upon Plaintiffs to track their own hours, Plaintiffs confirmed they were paid for all hours reported, and Defendants had no reason to believe they had violated the FLSA. *Id.*

Willful conduct is significant under the FLSA because where it is proven, the statute of limitations for the plaintiff is extended from two years to three. *See* 29 U.S.C. § 255(a); *Allen*, 495 F.3d at 1323. In order for this to matter, Plaintiffs must first prove that Defendants actually violated the FLSA – something they cannot do until trial, if at all, because the Court has found a genuine issue of fact as to whether Plaintiffs were fully compensated for all hours actually worked. In *Allen*, the Eleventh Circuit reversed the district court's grant of summary judgment to the employer and found that the issue of willfulness should await the jury's determination of underlying liability:

> We have concluded that triable issues of fact remain as to some Plaintiffs' claims that they worked overtime without compensation; as such, the district court's ruling that the two-year limitation applies is reversed and a determination of which statute of limitations to apply must be reserved until it is determined whether a violation of the FLSA occurred in this case.

*Id.* at 1324. Consistent with *Allen*, this Court finds the issue of willfulness must await the jury's consideration of whether Defendants violated the FLSA. *See Turner v. Aldo U.S., Inc.*, 2009 WL 2489267, at *5 (M.D. Fla. Aug. 10, 2009).

Aside from timing, however, the Court also finds there is enough evidence of willfulness to preclude summary judgment. "To establish that the violation of the Act was willful in order to extend the limitations period, the employee must prove by a preponderance of the evidence that

his employer either knew that its conduct was prohibited by the statute or showed reckless disregard about whether it was." *Alvarez Perez*, 515 F.3d at 1162-63.  The Plaintiffs all testified, to varying extents, that they were made to believe they could not properly record all time worked during their break periods for fear of being disciplined or fired.  *See* Gonzalez Dep. at 32, 36-40; Diaz Dep. at 37-38, 41; Huaman Dep. at 30-31, 36, 42-43, 46-52.  If the jury finds Defendants violated the FLSA, the jury might also reasonably infer from this testimony that Defendants acted willfully.  *See Brown v. Gulf Coast Jewish Family Servs., Inc.*, 2011 WL 3957771, at *9 (M.D. Fla. Aug. 9, 2011) ("Because it can be reasonably inferred that Plaintiff was not taking lunch breaks and that Defendant knew Plaintiff was not taking lunch breaks, these assertions, when viewed in the light most favorable to Plaintiff, create a genuine issue of material fact as to whether Defendant recklessly disregarded its obligations under the FLSA or merely acted unreasonably in failing to pay Defendant for working through lunch breaks.").

Although the Court denies summary judgment on willfulness, practically speaking it is unclear how the Plaintiffs would benefit from a three-year limitations period.  This lawsuit was commenced on September 13, 2010, well within two years of when any of the Plaintiffs began employment with Metropolitan.  Metropolitan hired Plaintiff Gonzalez and Plaintiff Diaz in February 2009, and Plaintiff Huaman in June 2010.  Given these dates, Plaintiffs cannot reach back three years, into 2007, to collect unpaid wages because they were not even working for Metropolitan at that time.  This matter is further muddled by Plaintiffs' apparent conflation of the concepts of willfulness and good faith, and the effect of each.  *See* Plaintiffs' Resp. at 7-8. They are distinct questions with distinct consequences.  *See Alvarez Perez*, 515 F.3d at 1162-63. In any event, because the parties have not briefed this issue and because it is premature for the reasons discussed above, the Court may revisit the practical effect, if any, of a determination of willfulness after the jury decides liability.

### E.  Did the Defendants Act in "Good Faith"?

The Court also denies summary judgment as to whether Defendants acted in good faith. Where an employer violates the FLSA, he is liable "in the amount of the employee's unpaid overtime compensation 'and in an additional equal amount as liquidated damages.'"  *See Allen*, 495 F.3d at 1323 (quoting 29 U.S.C. § 216(b)).  "An exception exists when the employer acted in good faith and had 'reasonable grounds for believing that he was not violating the Act.'"  *See id.* (quoting 29 U.S.C. § 260).  The question of good faith is for the judge, not the jury. *See* 29 U.S.C. § 260.

The Eleventh Circuit has said that where a jury determines the employer acted willfully in violating the FLSA, the judge may not inconsistently find that the employer also acted in good faith.  *See Alvarez Perez*, 515 F.3d at 1166 ("in an FLSA case a jury's finding in deciding the limitations period question that the employer acted willfully precludes the court from finding that the employer acted in good faith when it decides the liquidated damages question").  Because there is an issue of fact as to willfulness (*i.e.*, a jury could reasonably find willfulness if Plaintiffs' evidence is believed), the Court cannot yet address Defendants' good faith defense. Summary judgment is denied on this issue; the Court will address it, to the extent necessary, upon the jury's determination of liability and willfulness.

### Conclusion

In conclusion, the Court partially grants summary judgment to the Defendants and partially grants summary judgment to the Plaintiffs.  The Court finds that Plaintiffs' break time is not compensable as a matter of law and that the Galos are FLSA employers as a matter of law. The Court leaves for the jury all remaining issues discussed above, sans the question of good faith, which the Court will address after trial, to the extent required.

Accordingly, it is hereby **ORDERED and ADJUDGED** as follows:

1) Defendants' Motion for Summary Judgment [ECF No. 24] is **GRANTED IN PART** and **DENIED IN PART**, as set forth above.
2) Plaintiffs' Motion for Partial Summary Judgment [ECF No. 40] is also **GRANTED IN PART** and **DENIED IN PART**.
3) As to alleged actual working time during break periods, Plaintiffs are directed to provide Defendants with specific calculations of the time they contend was omitted from their pay, along with all supporting documentation, by **May 1, 2012**.
4) To the extent that the parties' pretrial stipulation, witness and exhibit lists, and other pretrial filings require amendment in light of this ruling, the parties are directed to file the amended documents with the Court no later than **May 7, 2012**.

**DONE and ORDERED** in chambers at Miami, Florida on April 26, 2012.

_____
ROBERT N. SCOLA, JR
**UNITED STATES DISTRICT JUDGE**

*Copies to:*
Counsel of Record